[Crim. No. 24654. Sept. 22, 1986.]

In re BILLY RAY HUFFMAN on Habeas Corpus.

COUNSEL

David L. McKenna, Public Defender, and Scott H. McCraw, Deputy Public Defender, for Petitioner.

Frank O. Bell, Jr., State Public Defender, Ezra Hendon, Chief Assistant State Public Defender, Linda Feldman, Deputy State Public Defender, Kenneth I. Clayman, Public Defender (Ventura), and Gary R. Nichols, Deputy Public Defender, as Amici Curiae on behalf of Petitioner.

John K. Van de Kamp, Attorney General, John W. Carney and Jay M. Bloom, Deputy Attorneys General, for Respondent.

OPINION

**GRODIN, J.**—We granted review after the Court of Appeal denied a writ of habeas corpus. The question presented is whether petitioner, once confined

for treatment as a mentally disordered sex offender (MDSO), was denied equal protection of the laws when he, unlike offenders confined for treatment as narcotics addicts, received no "conduct" or "participation" credits against a subsequent prison term for time spent in the treatment facility. We conclude that petitioner is not entitled to such credits and will disapprove certain Court of Appeal decisions insofar as they conflict with our views.

## FACTS AND PROCEDURAL HISTORY

In August 1979, petitioner was convicted after pleading guilty to one count of forcible rape with great bodily injury upon a ten-year-old girl. (Pen. Code, §§ 261, subd. (2), 12022.7.) Pursuant to former section 6300 et seq. of the Welfare and Institutions Code, criminal proceedings were suspended, petitioner was adjudged an MDSO, and he was committed for treatment to Patton State Hospital. (Welf. & Inst. Code, former §§ 6302-6316.) In early 1982, he withdrew from hospital treatment programs. He was found unamenable to further treatment and, in November 1982, was returned to the criminal court for sentencing. (*Id.*, former § 6325.)

At the sentencing hearing, petitioner claimed his prison sentence, already subject to reduction by the actual time spent in hospital confinement (*ibid.*; Pen. Code, § 2900.5), should be further reduced by "conduct" and "participation" credits (Pen. Code, §§ 2930-2935) attributable to his hospital stay. While the MDSO laws make no provision for such conduct and participation credits, petitioner urged they are required by principles of equal protection, since they are allowed by the statutes governing offenders committed for treatment as narcotics addicts. (Welf. & Inst. Code, § 3201, subd. (c).)

The trial court refused to grant the credits, and petitioner's contention was also rejected on appeal. After the judgment on appeal became final, and on the basis of an intervening Court of Appeal decision (*People* v. *Jobinger* (1984) 153 Cal.App.3d 689 [200 Cal.Rptr. 546]), petitioner sought a writ of habeas corpus from this court. We issued an order to show cause returnable before the Court of Appeal, which has again rejected his contention. He renews his claim on review.

## DISCUSSION

At the outset, the People claim petitioner is foreclosed from relief on habeas corpus, since the issue he presents was raised and rejected on

appeal, and habeas corpus is not a second appeal. (E.g., *In re Eli* (1969) 71 Cal.2d 214, 219 [77 Cal.Rptr. 665, 454 P.2d 337]; *In re Waltreus* (1965) 62 Cal.2d 218, 225 [42 Cal.Rptr. 9, 397 P.2d 1001].) This argument was accepted by the Court of Appeal, but we must disagree. The writ will lie where the trial court has exceeded its jurisdiction by sentencing a defendant "to a term in excess of the maximum provided by law" (*In re Estrada* (1965) 63 Cal.2d 740, 750 [48 Cal.Rptr. 172, 408 P.2d 948]), or to correct a misinterpretation of statute resulting in a confinement "in excess of the time allowed by law" (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 18 [9 Cal.Rptr. 607, 357 P.2d 839]). Moreover, this court has said that the constitutionality of legislation "is always open to challenge on habeas corpus," even if previously raised on appeal. (*In re King* (1970) 3 Cal.3d 226, 229-230, fn. 2 [90 Cal.Rptr. 15, 474 P.2d 983].)

Under the principles established by these cases, a prisoner may claim on habeas corpus that he was sentenced to a term in excess of that permitted by the Constitution, even if his claim was previously rejected on direct appeal. Here, petitioner asserts that denial of conduct and participation credits against his prison term was unconstitutional, resulting in a sentence "in excess of the time allowed by law." His petition is proper on that basis.

The Court of Appeal also rejected petitioner's claim on the merits. For reasons which will appear, we conclude that it reached the correct result.

The MDSO statutes (Welf. & Inst. Code, former § 6300 et seq.) were repealed in 1981 and replaced prospectively by a new treatment-confinement scheme for certain persons convicted of sex crimes (Stats. 1981, ch. 928, §§ 1-4, pp. 3484-3486; Pen. Code, new §§ 1364-1365). The former MDSO law remains applicable to offenders, like petitioner, who were committed under its provisions. (Stats. 1981, *supra,* § 3, pp. 3485-3486; see *Baker* v. *Superior Court* (1984) 35 Cal.3d 663, 666 [200 Cal.Rptr. 293, 677 P.2d 219].)

Under the most recent version of the former law, if there was probable cause to believe one just convicted of a sex offense was an MDSO—i.e., one "who by reason of mental defect, disease, or disorder, [was] predisposed to the commission of sexual offenses to such a degree that he [was] dangerous to the health and safety of others" (Welf. & Inst. Code, former § 6300)—the criminal court was empowered, on its own motion or on application of either party, to "adjourn the [criminal] proceeding or suspend the sentence, as the case may be," and certify the defendant to the superior court for MDSO proceedings. (*Id.,* former § 6302.) If, after psychiatric examinations

and appropriate hearings, the superior court found defendant to be an MDSO who was amenable to treatment, the court could commit him to the Department of Mental Health for confinement in a state hospital, to the county mental health director for confinement in an appropriate treatment facility, or to supervised outpatient status. (*Id.,* former § 6316, subd. (a)(1).)

Under 1977 amendments, when the offender was committed as an MDSO, the committing court or the Board of Prison Terms (depending on whether defendant came under the determinate or indeterminate sentencing laws) was required to compute the "longest term of imprisonment" for the underlying offenses. Except as otherwise provided, this period represents his "maximum term of commitment" as an MDSO, beyond which he may not be kept in "actual custody." (*Id.,* former § 6316.1, subds. (a), (b).) The "longest term of imprisonment" is to include credit for actual days spent in presentence custody (see Pen. Code, § 2900.5),[1] but is to "[disregard] any [good-conduct and participation] credits which could have been earned under Sections 2930 to 2932, inclusive, of the Penal Code." (Welf. & Inst. Code, former § 6316.1, subd. (a).)[2]

Under various circumstances, an MDSO may be returned to the criminal court before expiration of his "maximum term of commitment," and criminal proceedings may then be resumed. This may occur, for example, if he is found no longer dangerous or, like petitioner, not amenable to further treatment. (*Id.,* see former §§ 6325, 6325.2, 6327.) If the person is then sentenced for his criminal offense, he must receive credit on his prison term for his actual days of hospital confinement as an MDSO. (*Id.,* former § 6325.) But the statute makes no provision that the actual period of im-

---

[1]Section 2900.5 provides that a convicted felon or misdemeanant shall receive credit against his term of imprisonment for all days actually spent in custody, "including but not limited to any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, juvenile detention facility, or similar residential institution . . . ."

[2]Penal Code section 2931 provides that a prisoner whose crime was committed before January 1, 1983, may earn such credits in a ratio of up to three months of good-behavior credit for each eight months served, and up to one month of participation credit for each eight months served, for a total of up to one-third off the time which would otherwise be spent in custody. (Subds. (a)-(d).) Good-behavior credits are earned for a period of forbearance from criminal misconduct or serious disciplinary infractions of prison rules and regulations. (Subd. (b).) Participation credits are based on participation in "work, educational, vocational, therapeutic, or other prison activities." (Subd. (c).) Section 2930 requires that prisoners be furnished information on prison programs and conduct rules. Section 2932 explains the rules and procedures for loss or denial of credits.

Persons convicted of offenses committed on or after January 1, 1983, are not governed by section 2931 but may participate in a revised program of "worktime credit." (Pen. Code, §§ 2933, 2934.) "A prisoner subject to the provisions of Section 2931" may "waive in" to the worktime-credit program.

prisonment be further reduced by conduct or participation credits earned as an MDSO hospital patient.

If a still-committed MDSO hospital patient is approaching his "maximum term of commitment," and the Director of Mental Health has cause to believe the patient remains dangerous, the director may alert the prosecutor to file a petition for extended commitment on that ground. If after a hearing with criminal safeguards the patient is found a still-dangerous MDSO, his commitment may be extended for two additional years, and indefinite two-year renewed commitments can be obtained under the same procedures. The patient may be transferred to a Department of Corrections facility if he is nonamenable to treatment in a state hospital or stricter security and super-vision are required. Amenability to treatment is not a prerequisite to extended commitment, though the patient must be offered treatment in any facility to which he is confined. (*Id.,* former § 6316.2.)

In *People* v. *Saffell* (1979) 25 Cal.3d 223 [157 Cal.Rptr. 897, 599 P.2d 92], this court held that the statutory exclusion of conduct and participation credits from computation of an MDSO's "maximum term of commitment" did not deny MDSOs equal protection of the laws when compared with criminals directly sentenced to state prison. The *Saffell* majority acknowl-edged that the "fundamental" interest in personal liberty was at stake, and that the "strict scrutiny" standard of equal protection analysis thus applied. (P. 228.) Nonetheless, it found a "compelling interest" necessarily served by the MDSO statute's rule of exclusion.

*Saffell* reasoned as follows: The purpose of imprisonment is *punishment,* while the primary purpose of an MDSO commitment is *treatment* as a humanitarian alternative to punishment. The treatment mode requires flex-ibility in keeping the MDSO patient in hospital confinement. If conduct and participation credits were deducted from his maximum hospital confinement, mental health officials might be forced to resort prematurely to the cum-bersome extended-commitment procedures to allow treatment to continue and protect public safety. (Pp. 230-232.)

*Saffell* provided five further reasons why conduct and participation credits were unsuitable to an MDSO hospital commitment. First, the promise that nondisruptive hospital conduct will result in a shorter commitment is in-compatible with treatment for a sex offender. Second, the threat of return to prison is adequate incentive to avoid misbehavior in the hospital. Third, there is no evidence that state hospitals provide the "work, educational, vocational, [or] therapeutic" activities for which participation credit may be earned in prison. Fourth, state hospitals are not administratively equipped

to compute the credits. Fifth, "good-time" credits are meaningless in the context of a commitment which can be extended indefinitely. (P. 234.)

In *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], this court held that Penal Code sections 2930-2932 and 4019,[3] which provide for good-time and participation credits in various circumstances, apply by their terms only to time confined in a jail or prison; hence, an MDSO returned for sentencing after a hospital stay could not claim he had earned such credits during his presentence confinement in the hospital. (Pp. 502-506.) The court affirmed *Saffell's* holding that the Legislature's refusal to allow MDSOs to earn conduct and participation credits does not violate equal protection. (Pp. 506-508.)[4]

After the decisions in *Saffell* and *Sage,* the Legislature amended the statutes governing commitment of narcotics addicts. (Welf. & Inst. Code, § 3000 et seq.) Previously under these statutes, if a criminal offender was found to have a treatable drug problem, sentence could be withheld or suspended and the offender committed for an indeterminate period of treatment at the California Rehabilitation Center (CRC). (*Id.,* former § 3201.) In 1980, section 3201 was revised to require that sentence be imposed before commencement of commitment proceedings, and that, if committed, the offender be released on parole from CRC once he has been actually confined for a period equal to his prison term. The computation of maximum CRC confinement must include credit for conduct and participation credits earned in that facility, as provided in Penal Code sections 2930-2932. (*Id.,* § 3201, subd. (c).)

The amendments were expressly made applicable only to persons, unlike petitioner, whose crimes were committed after the effective date of July 29, 1980. (Stats. 1980, ch. 822, § 9, p. 2590.) However, the Court of Appeal has concluded that such prospective application denied equal protection to CRC patients whose offenses occurred before that date. (*In re Morales* (1981) 115 Cal.App.3d 456, 463 [171 Cal.Rptr. 425].)

---

[3]At the time *Sage* was decided, section 4019 provided that one confined in a county or city jail, industrial farm, or work camp for more than six days (including presentence custody) under a sentence of imprisonment, or as a condition of probation, or for a definite time for contempt, or to work off a fine, was entitled to one day in six off his sentence of confinement unless he refused assigned work, and a further deduction of one day in six unless he failed to obey reasonable jail rules and regulations.

[4]*Sage* nonetheless ruled that equal protection requires the award of conduct and participation credits against a felon's prison term for *presentence jail time* if the offender would otherwise spend a longer actual period of *incarceration* than one who had been confined only in prison after conviction. (26 Cal.3d at pp. 506-509.) Penal Code section 4019 has since been amended to provide a felon sentenced to prison with his presentence-custody conduct and participation credits.

The 1980 amendments included no provision for application of conduct and participation credits earned at CRC when, prior to his maximum period of CRC confinement, the offender was returned to criminal court as drug-free or unfit for treatment, and the prison sentence was then executed. (See Welf. & Inst. Code, §§ 3053, 3109, 3200.) However, such credit was held required by principles of equal protection. (*People* v. *Talton* (1983) 145 Cal.App.3d 729, 730-731 [193 Cal.Rptr. 660]; *People* v. *Hankins* (1982) 137 Cal.App.3d 694, 697-700 [187 Cal.Rptr. 210]; *In re Martin* (1981) 125 Cal.App.3d 896, 899-902 [178 Cal.Rptr. 445].)

Also subsequent to *Saffell* and *Sage,* the Legislature instituted a new, limited voluntary treatment scheme for persons imprisoned for certain sex offenses. This new scheme, which replaces the MDSO procedure for post-1981 offenses, expressly allows an inmate to earn conduct and participation credits during his hospital confinement. (Pen. Code, § 1364.)[5]

■ Petitioner contends that these developments have undermined the rulings of *Saffell* and *Sage*. The state has no compelling interest, he asserts, in denying MDSOs conduct and participation credits against subsequent prison terms while granting such credits to CRC patients and those sex offenders accepted for treatment under new Penal Code section 1364. He urges that such discrimination against prisoners who were previously confined as MDSOs denies equal protection of the laws.

A recent Court of Appeal opinion, *People* v. *Jobinger, supra,* 153 Cal.App.3d 689, is directly on point. Jobinger was committed to Atascadero State Hospital as a criminal MDSO in March 1980. In late 1982, prior to

---

[5]The People do not quarrel with the holdings of *Morales* and the *Talton-Martin* line of decisions. However, there is serious doubt whether *Morales* is correct. *Morales* held that, once the Legislature decided to equate the maximum confinements of prison inmates and CRC patients, it could not discriminate against patients whose crimes occurred before a certain date, since "date of incarceration [*sic*] is not a rational difference between classes of persons." (115 Cal.App.3d at pp. 460-461, citing *In re Kapperman* (1974) 11 Cal.3d 542 [114 Cal.Rptr. 97, 522 P.2d 657].) Later, in *Baker* v. *Superior Court, supra,* 35 Cal.3d 663, we rejected claims by an MDSO that he was denied equal protection because he— unlike post-1981 sex offenders or other prison inmates of any vintage—was subject to an extended commitment for dangerousness. (Compare Welf. & Inst. Code, former § 6316.2, with Pen. Code, §§ 1364-1365.) In *Baker,* we criticized *Morales'* reasoning, noting that disparities in treatment based on time of offense often occur when the Legislature decides to modify its approach to a class of offenders. (35 Cal.3d at pp. 669-670.) If *Morales* is wrong, petitioner, whose crime occurred before July 29, 1980, cannot claim the MDSO law treats him more harshly than the law governing addict-offenders treats CRC participants of the same vintage. We need not decide the issue, however, since we conclude on other grounds that petitioner's equal protection arguments lack merit.

completion of his maximum MDSO commitment, the medical director at Atascadero found him unamenable to further treatment; Jobinger was returned to criminal court and sentenced. At that time, he received credit for all time actually spent at Atascadero and in presentence jail custody, but he was not awarded conduct credit for his hospital confinement. He appealed the denial of conduct credit, asserting a violation of equal protection.

The *Jobinger* court quickly rejected the claim that there is unlawful credit discrimination between MDSOs and those post-1981 sex offenders accepted for treatment under new Penal Code section 1364. (Pp. 693-694; see also *People* v. *Brunner* (1983) 145 Cal.App.3d 761, 766-767 [195 Cal.Rptr. 367].) We agree. In *Baker, supra,* we expressly held that the Legislature did not violate the equal protection clause when it altered the scheme for treating sex offenders while providing that persons committed under the prior system would remain subject to its provisions. (35 Cal.3d at pp. 668-670.)

Moreover, there are compelling reasons for the disparity in credit treatment. An offender is not eligible for the Penal Code section 1364 program until he has served all but the last two years of his determinate sentence. At that time, he may *volunteer* for hospital treatment (currently limited to a 50-bed program) during the remainder of his term. Unlike MDSOs, persons accepted under Penal Code section 1364 may not be placed on outpatient status before their sentences expire and must serve a supervised postsentence parole.

An offender would be unlikely to volunteer for treatment if he were unable to earn conduct and participation credits he could receive if he remained in state prison. Hence, there is constitutional justification for the disparity in credit eligibility between post-1981 sex offenders and MDSOs.

However, the *Jobinger* court accepted the argument that the law which grants CRC patients conduct and participation credits against their subsequent prison sentences has eliminated the constitutional grounds for withholding such credits from MDSOs. In view of the similar designs and objectives of the two schemes, said *Jobinger,* the reasons set forth in *Saffell* no longer are compelling justifications for denying full credits to MDSOs alone. (153 Cal.App.3d at pp. 695-698.)[6]

---

[6]Two subsequent Court of Appeal cases have followed *Jobinger.* (*People* v. *Cruz* (1985) 165 Cal.App.3d 648, 652 [211 Cal.Rptr. 512]; *People* v. *Richard* (1984) 161 Cal.App.3d 559, 563 [207 Cal.Rptr. 715].) We ordered that several Court of Appeal decisions which disagreed with *Jobinger* not be published.

In this respect, we find *Jobinger's* reasoning unpersuasive. Despite superficial procedural similarities in the CRC and MDSO schemes, critical substantive differences in the two programs are compelling reasons for separate credit treatment.

We acknowledge, as in *Saffell, supra,* 25 Cal.3d 223, that involuntary hospital commitments affect the "liberty" interest so as to invoke strict scrutiny review of disparities in treatment. (*In re Moye* (1978) 22 Cal.3d 457, 465 [149 Cal.Rptr. 491, 584 P.2d 1097]; *People* v. *Olivas* (1976) 17 Cal.3d 236, 251 [131 Cal.Rptr. 55, 551 P.2d 375].) But this does not require us to hold that any benefit granted one category of nonprison confinement must automatically be accorded all others.

The Legislature may experiment individually with various therapeutic programs related to criminal charges or convictions. (Cf. *Baker, supra,* 35 Cal.3d at pp. 669-670.) The equal protection issue is whether actual distinctions in the statutory classes realistically justify disparities in treatment under the appropriate standard of review.

The CRC and pre-1981 MDSO programs are superficially similar in many respects. Both involve postconviction diversion into a therapeutic program in lieu of penal incarceration. Both permit rediversion to prison if treatment proves either futile or successful before the maximum confinement period has expired. Both gear the maximum period of therapeutic confinement in some fashion to the prison term applicable to the offender. And both allow "straight-time" credit against subsequent prison time for time spent under the therapeutic commitment.

But the status of MDSO patients involves a crucial consideration not applicable to CRC committees. An MDSO, following his conviction of a sexually motivated crime (Welf. & Inst. Code, former § 6302, subd. (a)), was found in a separate adjudication to be one "who by reason of a *mental defect, disease, or disorder*" is so predisposed to sexual offenses "that he is *dangerous* to the health and safety of others." (*Id.,* former §§ 6300, 6305-6316, italics added.) By these findings that he committed a dangerous criminal offense and had a mental disorder which rendered him still dangerous, society obtained a compelling interest in his more stringent treatment and confinement for purposes of public safety. (*Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 171-172 [167 Cal.Rptr. 854, 616 P.2d 836]; *In re Franklin* (1972) 7 Cal.3d 126, 146 [101 Cal.Rptr. 553, 496 P.2d 465]; see *Baxstrom* v. *Herold* (1966) 383 U.S. 107, 111 [15 L.Ed.2d 620, 623-624, 86 S.Ct. 760].)

Therapeutic treatment of a *dangerous mental disorder* by the Department of Mental Health may well not be compatible with a direct incentive-credit

program. Progress in the treatment of a specific psychosexual illness bears no necessary relationship to the patient's mere institutional good behavior and willingness to cooperate.[7] Yet under a "good-time" credit system, the period of therapeutic confinement would be automatically reduced for co-operative conduct regardless of therapeutic progress, even where further confinement and treatment is necessary for public safety.[8] Even if the Legislature has concluded that time credit is a useful conduct incentive in other rehabilitative settings, such as prison or CRC, we conclude it need not draw the same conclusion with respect to a separate program for treatment of dangerous psychosexual disorders. (See *Saffell, supra,* 25 Cal.3d at p. 234; *People* v. *Austin* (1981) 30 Cal.3d 155, 163-164.)[9]

Nor is it crucial that denial of hospital participation credits may mean that an MDSO will be confined in the hospital for a longer period than he would have been incarcerated had he gone directly to prison. As *Saffell*

---

[7]Under the conduct-credit statutes applicable to petitioner as a pre-1983 offender, prison credits are computed at the outset, then subtracted under a specified formula for individual instances of misbehavior or failure to participate. Not more than 90 days of credit can be lost for a single disciplinary violation other than one which would support criminal charges (Pen. Code, § 2932, subd. (a)), and not more than 30 days can be lost for a single failure to participate in qualified "work, educational, vocational, therapeutic or other prison activities" (*id.,* §§ 2931, subd. (c), 2932, subd. (b)). "Failure to succeed after demonstrating a reasonable effort in the specified activity shall not result in loss of participation credit." (*Id.,* § 2931, subd. (c).)

A pre-1983 offender may "waive in" to the "worktime credit" program adopted by the Legislature in 1982. (*Id.,* § 2934.) But the "worktime credit" program is even more remote than the goals of therapy for a specific mental disorder. It gives credit only for actual participation in prison work assignments and academic and vocational education programs. No credit is earned for mere good behavior, but work credits may be lost for disciplinary infractions.

[8]MDSOs in hospital confinement are subject, at the end of their "maximum term of commitment," to any number of two-year extended commitments based on new findings that they remain dangerous. (Welf. & Inst. Code, former §§ 6316.1, 6316.2.) No similar extended-commitment provision applies to CRC committees, who have never been found dangerous and were not committed on that basis. As we noted in *Saffell,* a participation-credit-program for MDSO hospital confinement might force hospital officials to resort prematurely to the extended-commitment procedures. (25 Cal.3d at pp. 231-232.)

[9]Most sex offenders are specifically *ineligible* for a CRC diversion for narcotics addiction (Welf. & Inst. Code, § 3052, subd. (a)), one of many indications that the Legislature has placed sex offenders in a special category of public concern, to be treated and confined on that basis.

Moreover, there are plausible reasons why the Legislature would conclude that conduct credit is important to the CRC program, but not to treatment of MDSOs. The principal goal of CRC confinement is elimination of drug dependency. This problem, which has both physiological and psychological roots, may well respond to a credit incentive to obey institutional rules, which will include abstinence from addicting drugs.

*Moye, supra,* 22 Cal.3d 457, is not contrary to our analysis here. There, we concluded that safeguards in the procedures for indefinite commitment of MDSOs must also be applied to persons committed for criminal insanity. But *Moye* suggested only that there is no constitutionally valid basis for disparity in treatment between *two classes* of persons who are committed under *similar findings* of *criminally dangerous mental disorder*.

holds, the hospital treatment received by an "amenable" MDSO justifies holding him longer than if he had immediately received a penal sentence. (25 Cal.3d at pp. 226, 232; cf. *People* v. *Feagley* (1975) 14 Cal.3d 338, 376 [121 Cal.Rptr. 509, 535 P.2d 373].)[10]

Here, of course, petitioner does not claim hospital participation credits against his maximum *hospital* confinement. After a period of hospital commitment, he was found unamenable to further treatment, returned to criminal court, and sentenced to prison. He urges only that conduct credits earned in the hospital should apply to reduce his subsequent *penal incarceration.* Without such credit, his total period of confinement, ultimately penal, may exceed that of an identical offender who, though also adjudged an MDSO, was found unamenable to treatment at the outset and thus immediately sentenced to prison, where he could earn participation credits.

But we see no reason why this compels recognition of hypothetical hospital credits against petitioner's prison term. As we have suggested, the objectives of hospital and penal confinement are separate (*Saffell, supra,* 25 Cal.3d at pp. 229-230), and the benefits and burdens of each are distinct. While in the hospital, petitioner received treatment not available to an MDSO prisoner; by transfer to prison, he has avoided the possibility of indefinite extended commitments for continuing dangerousness. (Welf. & Inst. Code, former § 6316.2.) It would be anomalous if a conduct-credit system deemed inappropriate to the hospital setting so long as petitioner remained there must nonetheless be applied to his hospital time when, having been found unamenable to further treatment, he is sentenced to prison.

We therefore hold that the disparity in participation credit allowances between the pre-1981 MDSO law and the 1980 CRC statutes does not deny MDSOs equal protection of the law. The decisions in *Jobinger, Cruz,* and *Richard* (*ante,* fn. 6) are disapproved to the extent they conflict with this opinion.

Petitioner has demonstrated no right to the relief he seeks. Hence, the Court of Appeal's judgment denying a writ of habeas corpus is affirmed.

---

[10]Of course, the period of actual confinement for an MDSO patient may also be *shorter* than the corresponding penal sentence even as reduced for prison participation credits. If the hospital treatment is successful before expiration of even the shortest possible prison term, the offender must be returned to criminal court and may be placed on probation if otherwise eligible. (Welf. & Inst. Code, former § 6325.)

Mosk, J., Broussard, J., Reynoso, J., Lucas, J., and Panelli, J., concurred.

Bird, C. J., concurred in the judgment only.