[No. 56498–1.   En Banc.   February 22, 1990.]

*In the Matter of the Personal Restraint of*
FRANK R. BORDERS, ET AL, *Petitioners.*

*Frank R. Borders,* pro se, and *Eric J. Nielson* of *Washington Appellate Defender Association,* for petitioner Borders.

*Robert Bouvart* and *Holland & Scales, P.S.,* for petitioner Williams.

*Kenneth O. Eikenberry, Attorney General, William L. Williams, Senior Assistant,* and *Aaron K. Owada, Assistant,* for respondent.

DORE, J.—Petitioners Borders and Williams filed personal restraint petitions seeking an order directing the Indeterminate Sentence Review Board to adjust their respective durations of confinement. Specifically they asked that the court order the board to grant them good time credit toward their sentences for the time they served at Western State Hospital. Both had originally received suspended sentences and were sent to Western State Hospital for treatment as sex offenders. They were found untreatable and their suspended sentences were revoked. The Court of Appeals certified these cases here.

We affirm the denial of good time credit to defendants.[1]

---

[1]The statutory term "early release" time will be referred to in this opinion as "good time" credit. *See* RCW 72.68.031. Good time credit involves the concept of awarding reductions in the length of confinement for good behavior. D. Boerner, *Sentencing in Washington* § 10.11 (1985); RCW 9.95.070. Under the indeterminate system, good time credits could be awarded to reduce the minimum terms of both jail and prison terms. RCW 9.95.070, former RCW 9.92.150.

## BORDERS

In 1981, Borders was found guilty of rape in the second degree and was sentenced to 5 years' probation. In 1983, Borders pleaded guilty to assault in the second degree. Pursuant to RCW 71.06, criminal proceedings were suspended, petitioner was adjudged a sexual psychopath and committed for treatment to Western State Hospital in the sex offender program.

When Borders entered the sex offender program at Western State Hospital at age 24, he already had an extensive criminal history which included a number of violent sexual assaults against numerous women, men and children.

In August 1987, Western State Hospital reported that Borders was no longer amenable to treatment and was not safe to be at large. It was the opinion of the sex offender program's special review committee that "the only placement which [would] provide adequate protection for the community from Mr. Borders [was] the Department of Corrections for as long a period as possible." Exhibit 3, at 10.

The trial court revoked the suspended sentences and sentenced Borders to a minimum term of 34 months for the rape conviction which was to run consecutively with the assault charge. Borders was granted day–for–day credit, pursuant to RCW 71.06.120, for his time confined in Western State Hospital. He was denied good time credit.

## WILLIAMS

On February 1, 1982, Williams was convicted, in a jury trial, of two counts of statutory rape in the first degree. He molested his two daughters over a 2–year period. As a condition of his probation, he was not sent to prison but his sentence was suspended and he was committed to the sex offender program at Western State Hospital. After serving 4½ years, he was found nonamenable to treatment. On May 29, 1987, his probation was revoked and he was sentenced to serve a minimum 10–year term in the state institution. Each count was to run concurrently. Williams was

granted day–for–day credit for his time confined in Western State Hospital prior to sentencing, however, like Borders, he was denied good time credit.

Petitioners challenge the denial of good time credit for time served in the sex offender program at Western State Hospital.

### LEGISLATIVE GRANT OF GOOD TIME CREDIT TO INMATES DOES NOT APPLY TO PROBATIONERS INITIALLY COMMITTED TO SEX OFFENDER PROGRAMS

We reject petitioners' contention that RCW 72.68-.031[2] which concerns the transfer of inmates in correctional institutions to institutions for the mentally ill compels the award of good time credit to sex offenders initially committed to state hospitals. This provision applies by its terms only to persons committed to correctional facilities, not to persons initially committed to sex offender programs at state hospitals.

Furthermore, petitioners' argument fails to recognize the Legislature's distinctive treatment of sex offenders from other criminal offenders transferred to state hospitals for the mentally ill. While the Legislature clearly intended criminal offenders who were transferred from prison to state hospitals for their own welfare to receive good time credit, the Legislature omitted such provisions for sex offenders committed to state hospitals as sexual psycho-

---

[2]RCW 72.68.031 provides in relevant part:

"When . . . *the welfare of any person* committed to or confined in any state correctional institution or facility necessitates that such person be transferred or moved for observation, diagnosis or treatment to any state institution or facility for the care of the mentally ill, . . . the secretary and the board of prison terms and paroles shall adopt and implement procedures to assure that persons so transferred shall, while detained or confined at such institution or facility for the care of the mentally ill, be provided with substantially similar opportunities for parole or early release evaluation and determination as persons detained or confined in the state correctional institutions or facilities." (Italics ours.) RCW 72.68-.031.

paths. In RCW 71.06.120,[3] the Legislature recognized that time served by a sexual psychopath in a state hospital shall count as part of his sentence; however, there is an obvious omission for good time credit in this provision. Nor is there any other provision in the sexual psychopath statute which allows good time credit.

In light of the Legislature's distinction between sex offenders and other offenders, the statutes themselves do not compel the finding that sex offenders are entitled to earn good time credit while receiving treatment at a state hospital prior to incarceration.[4]

### EQUAL PROTECTION IS NOT VIOLATED BY DENYING GOOD TIME CREDIT TO SEXUAL PSYCHOPATHS

█ Petitioners argue that the denial of good time credit to sex offenders committed to state hospitals prior to incarceration at state prisons violates the equal protection clause under the fourteenth amendment to the United States Constitution and article 1, section 12 of the Washington State Constitution. This court considers article 1, section 12 and the equal protection clause of the Fourteenth Amendment substantially identical and they are thus considered as one issue. *American Network, Inc. v. Utilities & Transp. Comm'n,* 113 Wn.2d 59, 77, 776 P.2d 950 (1989).

██ At the threshold of any equal protection determination, the court must identify the appropriate standard of

---

[3]RCW 71.06.120 provides: "Time served by a sexual psychopath in a state hospital shall count as part of his sentence whether such sentence is pronounced before or after adjudication of his sexual psychopathy."

[4]Borders also argues that under the Sentencing Reform Act of 1981 (SRA) he is entitled to good time credit. Petitioner fails to recognize that the SRA only applies to persons serving sentences imposed pursuant to its provisions. Furthermore, the SRA developed a separate system for sentencing sex offenders and rejected its initial position of including the sex offender in the same system as all other offenders. D. Boerner, *Sentencing in Washington* § 8.1 (1985).

review. *Convention Ctr. Coalition v. Seattle,* 107 Wn.2d 370, 378, 730 P.2d 636 (1986). We will examine the denial of good time credit to petitioners under the rational basis test since it involves neither a fundamental right nor a suspect classification. *In re Whitesel,* 111 Wn.2d 621, 634, 763 P.2d 199 (1988). The intermediate level of scrutiny adopted in *State v. Phelan,* 100 Wn.2d 508, 671 P.2d 1212 (1983) is not applicable here because different interests are involved. *Phelan* found that a denial of day–for–day credit for *preconviction* jail time involved a deprivation of liberty, in addition to that which would otherwise exist, and a classification based on wealth. Here, an omission of good time credit for postconviction confinement does not add to petitioner's original liberty deprivation, nor is the omission predicated on indigency. A petitioner who is in legal custody after a judgment and sentence is left with a conditional liberty interest. *Whitesel,* 111 Wn.2d at 634. A statutory classification that affects such an interest is subject to examination under the rational basis test. *Whitesel,* at 634. Under this test, the State need only show that a legitimate state interest is advanced in denying good time credit to probationers committed to the sex offender program. *Whitesel,* at 634.

The petitioners argue that *In re Knapp,* 102 Wn.2d 466, 687 P.2d 1145 (1984) compels the conclusion of an equal protection violation here. In *Knapp,* one petitioner was committed to a state hospital pursuant to a determination of sexual psychopathy and the other was committed for treatment in relation to his theft. Subsequent to their commitment, their deferred sentences were revoked and their original sentences were reinstated. However, the petitioners were denied day–for–day sentence credit for their time confined at the state mental hospital. They filed petitions seeking the denied credit. In reviewing their claims, the court noted that the Legislature in RCW 72.68.031 recognized that persons sent to prison and then transferred to a state hospital should be given credit for their time confined in the treatment facility. *Knapp,* at 474. The court held the

dissimilar treatment afforded by RCW 72.68.031 to incarcerated inmates who are transferred to a mental hospital for their own welfare and to persons initially sent to a state hospital for treatment violates the equal protection clause:

> Both groups are sent to the hospital for "treatment" and not "punishment" yet the former group receives full sentence credit for their hospital time while the latter group, . . . would be denied the same credit. There is no logical reason for distinguishing between persons who are transferred to mental health facilities after confinement in prison and persons originally sent to mental health facilities by the sentencing court prior to confinement in prison.

*Knapp,* at 474.

While the language in *Knapp* is broad, it did not factually reach the issue of good time credit. Furthermore, because the denial of good time credit has less of an impact on petitioner's liberty interest, *Phelan,* at 515, a lesser standard of review than apparently adopted in *Knapp* is warranted.[5] Finally and most importantly, the court in *Knapp* did not concentrate on the specific classification of sex offenders but instead on the more general classification of offenders in need of mental health. For these reasons we find *Knapp* is distinguishable from the subject case.

We find that probationers who are found amenable to treatment and who become patients in the sex offender program at Western State Hospital are in a different classification than inmates committed to a Department of Corrections facility.

After conviction and prior to sentencing, an indeterminate sex offender could be evaluated by the sex offender program to determine whether such individual was amenable for treatment at Western State Hospital. If the sex offender was found amenable to treatment under the sex offender program, the judge could suspend the sentence and place the defendant on probation and order that he successfully enter and complete the sex offender program.

---

[5]The court in *Knapp* never articulated what standard of review it was using, however, it did acknowledge the "intermediate level of scrutiny" set forth in *Phelan. Knapp,* at 471.

By being amenable to treatment and entering the sex offender program, the indeterminate sex offender avoided incarceration in a Department of Corrections facility. The principal purpose of placing sex offenders at Western State Hospital was to provide treatment and rehabilitation so that an offender could modify his behavior and possibly be cured and released back into the community. This is in contrast to the purpose of incarceration at a Department of Corrections facility where serving time is punishment and good time is granted to control the behavior of inmates. For these reasons we find that probationers who are initially committed to the sex offender program for treatment and rehabilitation are not similarly situated to inmates initially committed to a Department of Corrections facility where good time is used as a custodial disciplinary tool.

In a case similar to the one before us, the Supreme Court of California held that equal protection of the law is not violated when mentally disordered sex offenders (MDSO), unlike addicted drug offenders committed to a state rehabilitation center, are denied "conduct" and "participation" credits against a subsequent prison term for time spent in the treatment facility. *In re Huffman*, 42 Cal. 3d 552, 724 P.2d 475, 229 Cal. Rptr. 789 (1986). We find the reasoning of the court in *Huffman* compelling.

The *Huffman* court found that, despite superficial similarities in the two schemes, critical substantive differences in the two programs were compelling reasons for separate credit treatment. The court reasoned:

> [T]he status of MDSO patients involves a crucial consideration not applicable to [drug addicts]. An MDSO, following his conviction of a sexually motivated crime was found in a separate adjudication to be one "who by reason of a *mental defect, disease, or disorder*" is so predisposed to sexual offenses "that he is *dangerous* to the health and safety of others." By these findings that he committed a dangerous criminal offense and had a mental disorder which rendered him still dangerous, society obtained a compelling interest in his more stringent treatment and confinement for purposes of public safety.

(Citations omitted.) *Huffman,* at 561; *see Baxstrom v. Herold,* 383 U.S. 107, 111, 15 L. Ed. 2d 620, 86 S. Ct. 760 (1966) (classification of mentally ill persons as either insane or dangerously insane may be reasonable distinction).

The court further found the therapeutic treatment of a sexual mental disorder was not compatible with an award of conduct or participation credits:

> Progress in the treatment of a specific psychosexual illness bears no necessary relationship to the patient's mere institutional good behavior and willingness to cooperate. Yet under a "good–time" credit system, the period of therapeutic confinement would be automatically reduced for cooperative conduct regardless of therapeutic progress, even where further confinement and treatment is necessary for public safety.

(Footnote omitted.) *Huffman,* at 562.

Like MDSO's in California, sexual psychopaths in Washington are adjudged to be mentally affected in a form which predisposes them "to the commission of sexual offenses in a degree constituting [them] a menace to the health or safety of others." RCW 71.06.010. In addition, the therapeutic treatment of probationers committed to the sex offender program is not compatible with a good time credit program:

> When an indeterminate probationer was placed in the Sex Offender Program, it was anticipated that he would successfully complete the program and not be incarcerated in a Department of Corrections' facility. Successful completion of the program would allow the patient to be released to either a less restrictive environment or back into the community. Patients came to the treatment program with the intent to change their behavior, not to "do time." They came with the full knowledge that positive changes in their behavior was expected for them to remain in the program. From a treatment modality perspective, as good time could only be relevant for use in a Department of Corrections' facility, the concept of good time is not compatible with treatment as it anticipates failure. This is not conducive to achieving the patient's goal of becoming rehabilitated.

Affidavit of Maureen Saylor, at 4–5.

As pointed out by the State's affidavit, patients in the sex offender program are not there to "do time," but are there with the intent to change their sexual deviant behavior. Yet under a good time credit system, the period of therapeutic

confinement would be automatically reduced for coopera- tive conduct, regardless of therapeutic progress and even where further confinement and treatment is necessary for rehabilitation and public safety. Furthermore, good time credit in the sex offender program is irrelevant because the length of therapy is not set for a definite period of time. To award good time credit for future use at a Department of Corrections facility anticipates that the patient will fail and is not compatible with treatment.

Here, petitioners claim good time credit for their time served in the hospital which they want applied against their prison sentence. With an omission of such credit, their total period of confinement including penal may exceed that of an identical offender who was found unamenable to treat- ment at the outset and who thus was immediately sen- tenced to prison where he could earn good time credit. We agree with and adopt the following rationale set forth in *Huffman*:

> [W]e see no reason why this compels recognition of hypotheti- cal hospital credits against petitioner's prison term. As we have suggested, the objectives of hospital and penal confinement are separate, and the benefits and burdens of each are distinct. While in the hospital, petitioner received treatment not avail- able to an MDSO prisoner; by transfer to prison, he has avoided the possibility of indefinite extended commitments for continuing dangerousness. It would be anomalous if a conduct– credit system deemed inappropriate to the hospital setting so long as petitioner remained there must nonetheless be applied to his hospital time when, having been found unamenable to further treatment, he is sentenced to prison.

(Citations omitted.) *Huffman*, at 563. Like the petitioners in *Huffman*, petitioners here received treatment not avail- able to a sex offender prisoner and by transfer to prison avoided indefinite commitment. We conclude that petition- ers' equal protection rights are not violated by denying them hypothetical hospital (good time) credit against their subsequent prison term and the State is not obliged to set up a good time program for sex offenders who might credit it toward a later prison sentence.

## Due Process

Petitioners' final argument is that a denial of good time credit violates their due process rights. The due process clause of the Fourteenth Amendment and Washington's Const. art. 1, § 3 provide that no state shall deprive any person of "life, liberty, or property, without due process of law". This court has recognized that, where a state creates a right to earn good time credit, a prisoner has a liberty interest in those credits which prevents their deprivation absent observation of minimal due process requirements. *In re Piercy*, 101 Wn.2d 490, 495, 681 P.2d 223 (1984); *Wolff v. McDonnell*, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974).

█ In this case, sex offenders in the petitioners' position (committed to a state hospital prior to incarceration) are not covered by any statute granting good time credit. Therefore, petitioners do not have a state created right to a liberty interest in good time credit.

## Conclusion

Petitioners who receive suspended sentences and are initially committed to the sex offender program at Western State Hospital for treatment and rehabilitation are not similarly situated as inmates sentenced directly to prison for custodial purposes. The denial of good time credit to patients initially confined to mental hospitals in the sex offender program advances the State's legitimate interest in possible successful therapy of sex offenders wherein the emphasis is on treatment and rehabilitation. This is a different classification than custody and discipline of prisoners sent to state prisons.

Borders, an adjudicated sexual psychopath, and Williams, who was initially sent to Western State for treatment and committed to the sex offender program, had their suspended sentences revoked and were transferred to the state penitentiary. They are not entitled to good time credit during the period of time they were undergoing treatment at Western State Hospital.

We affirm.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.