[No. A086488. First Dist., Div. Four. Apr. 7, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
GLEN FOSTER GREEN, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.B.

922

**COUNSEL**

Robert Derham, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant, Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and Eric D. Share, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**POCHÉ, J.**—Appellant, Glen Foster Green, appeals from a sustained petition and a commitment to Atascadero State Hospital entered after a jury found him to be a sexually violent predator (SVP) within the meaning of California's Sexually Violent Predators Act (Welf. & Inst. Code, § 6600 et seq.).[1]

A petition was filed October 6, 1997, seeking to have appellant declared a SVP. On November 14, 1997, the court conducted a hearing and after reviewing the petition and the reports of two mental health professionals

---

[1]Unless otherwise noted all subsequent statutory references are to the Welfare and Institutions Code.

found there was probable cause that appellant was a person coming within the provisions of section 6600. On the basis of the opinion in *In re Parker* (1998) 60 Cal.App.4th 1453, 1469-1470 [71 Cal.Rptr.2d 167] (due process requires potential SVP be given opportunity at probable cause hearing to be fully heard, to cross-examine state's witnesses and to call own witnesses), appellant sought and received a second probable cause hearing which was conducted in July 1998. At that hearing after the People presented their documentary evidence, counsel for appellant called and examined at considerable length the two mental health experts, Drs. Putnam and Sheppard, whose reports were submitted in support of the petition. (See *In re Kirk* (1999) 74 Cal.App.4th 1066, 1075-1076 [88 Cal.Rptr.2d 648].) At the conclusion of the hearing the court again found probable cause.

After a two-day trial on March 10, 1999, the jury returned a verdict finding the allegations of the petition to be true and the court committed appellant to the Department of Mental Health for two years. Appellant takes a timely appeal.

## I. DISCUSSION

Appellant raises two claims of error on appeal. First, he challenges section 6600 as constitutionally infirm, both on its face and as applied to him, because it does not accord to potential SVP's all those procedural rights guaranteed a criminal defendant under the United States and California Constitutions.

### A. *Equal Protection*

■ In order to establish a meritorious claim under the equal protection provisions of our state and federal Constitutions appellant must first show that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. (*People v. Andrews* (1989) 49 Cal.3d 200, 223 [260 Cal.Rptr. 583, 776 P.2d 285].) Equal protection applies to ensure that persons similarly situated with respect to the legitimate purpose of the law receive like treatment; equal protection does not require identical treatment. (*People v. Romo* (1975) 14 Cal.3d 189, 196 [121 Cal.Rptr. 111, 534 P.2d 1015].) ■ Strict scrutiny is the appropriate standard against which to measure claims of disparate treatment in civil commitment. (*Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 171, fn. 8 [167 Cal.Rptr. 854, 616 P.2d 836]; *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1153, fn. 20 [81 Cal.Rptr.2d 492, 969 P.2d 584]; *People v. Buffington* (1999) 74 Cal.App.4th 1149, 1156 [88 Cal.Rptr.2d 696].)

■ To successfully challenge the facial validity of a statute one must demonstrate the inevitable conflict of the statutory provisions with the

appropriate constitutional mandate; to successfully challenge a facially valid statute an individual must show that as applied to him the provision offends a protected right. (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].)

■ In fact, appellant's equal protection claim is quite narrowly confined to those like himself who are subject to the present SVP statutory scheme as compared to certain convicted criminals subject to the now repealed statutory scheme applied to mentally disordered sex offenders (MDSO's). (Former § 6300 et seq., repealed by Stats. 1981, ch. 928, § 2, p. 3485.) At the time the MDSO scheme was repealed it was repealed prospectively only. (See *Baker v. Superior Court* (1984) 35 Cal.3d 663, 668-670 [200 Cal.Rptr. 293, 677 P.2d 219].) The MDSO law provided for civil commitment after conviction of a sex offense for a period not to exceed the maximum term of imprisonment that could have been imposed for the offenses for which the committed person was convicted. (Former §§ 6302, 6316.1.) When it repealed the MDSO scheme the Legislature provided that individuals then committed as MDSO's and those whose terms of commitment had been extended under the law would remain subject to the provisions of the MDSO law "until the commitments are terminated and the persons are returned to the court for resumption of the criminal proceedings." (Stats. 1981, ch. 928, § 3, pp. 3485-3486.)

The MDSO law also provided for recommitment beyond the maximum term for certain individuals. (Former § 6316.2.) Individuals who were committed under the repealed MDSO scheme and whose recommitment is sought under the statute are "entitled to the rights guaranteed under the Federal and State Constitutions for criminal proceedings" and "All proceedings shall be in accordance with applicable constitutional guarantees." (Former § 6316.2, subd. (e).)

The narrow class of individuals to which appellant wishes to compare himself are those persons committed as MDSO's who are subject to a hearing on a petition for extended commitment once their maximum term of confinement is about to elapse. (Former § 6316.2.) In appellant's view, while the two groups are similarly situated in being subject to a civil commitment, those subject to the MDSO law receive the full panoply of rights given defendants in criminal trials while under the SVP law individuals are denied their rights of confrontation and cross-examination because the statute permits showing the existence of prior convictions and the details underlying the commission of those offenses with documentary evidence. (§ 6600, subd. (a).)

Assuming that the category of MDSO's who are provided a hearing on an extension of their commitment is not so narrowly drawn as to be underinclusive (and hence not composed of individuals similarly situated to appellant), we look to the compelling interest the state has in making these distinctions. (*Hubbart v. Superior Court, supra,* 19 Cal.4th at p. 1153, fn. 20; *People v. Feagley* (1975) 14 Cal.3d 338, 355-358 [121 Cal.Rptr. 509, 535 P.2d 373].)

The MDSO commitment scheme as described above came into operation upon conviction and commitment but before sentence was imposed. While a person is committed as an MDSO his criminal case is suspended. (Former § 6316; *In re Bevill* (1968) 68 Cal.2d 854, 858 [69 Cal.Rptr. 599, 442 P.2d 679].)

"Under various circumstances, an MDSO may be returned to the criminal court before expiration of his 'maximum term of commitment,' and criminal proceedings may then be resumed." (*In re Huffman* (1986) 42 Cal.3d 552, 556 [229 Cal.Rptr. 789, 724 P.2d 475].) A person found to be an MDSO but found not amenable to treatment could be returned to court for sentencing. (Former § 6316.) Similarly, an extension of the commitment under the MDSO scheme is designed to permit an additional period of treatment. (*People v. Saffell* (1979) 25 Cal.3d 223, 229, 234 [157 Cal.Rptr. 897, 599 P.2d 92].) The clear focus of the MDSO scheme is to provide treatment for those sexual offenders who are amenable to it for so long as necessary.

Unlike an MDSO, an SVP has been sentenced and is about to be released before a petition is filed. (§ 6601.) The purpose of this provision "is to assure that potential sexually violent predators are identified, evaluated, and committed before their release into the community." (*People v. Superior Court (Whitley)* (1999) 68 Cal.App.4th 1383, 1391 [81 Cal.Rptr.2d 189].) As our Supreme Court has held, the SVP Act is "narrowly focused on a select group of violent criminal offenders who commit particular forms of predatory sex acts against both adults and children" and whose dangerousness stemming from their mental disorder makes them likely to continue such conduct even after punishment for their crime. (*Hubbart v. Superior Court, supra,* 19 Cal.4th 1138, 1144, 1153, fn. 20.) Amenability to treatment is not a prerequisite either to finding a person to be an SVP or to receiving treatment. (§ 6606, subd. (b).) All SVP's are committed for a two-year term without regard to the maximum length of their prison term, which has in any event already been served. (§ 6604.) Finally the SVP law uses the fact of conviction only as "evidence that may support a court or jury determination that a person is a sexually violent predator, but shall not be the sole basis for the determination." (§ 6600, subd. (a).)

We cannot say that the Legislature's stated goals are not compelling ones: that is to confine individuals found to be a continuing threat, despite the fact that these individuals have served their prison sentences, and to treat them for their mental disorders which make them likely to engage in acts of sexual violence. (Stats. 1995, ch. 763, § 1; *People v. Saffell, supra,* 25 Cal.3d at pp. 232-233.) Nor can we say that given the difference in the two statutory schemes the Legislature was compelled to provide the rights due criminal defendants to individuals subject to an SVP petition. While both the MDSO and the SVP schemes are civil commitment schemes, the SVP commitment takes place after the criminal proceeding is complete and the sentence has been served. It is a truly separate proceeding, both temporally and conceptually because the term of commitment is not determined by reference to, or limited by, the maximum criminal sentence.

This distinction is critical to the claim appellant makes. Because the circumstances of past crimes are under the SVP law part of the determination of SVP status, but are not sufficient in themselves to prove that status, "The existence of *any* prior convictions may be shown with documentary evidence. The details underlying the commission of *an offense that led to a prior conviction*, including a predatory relationship with the victim, may be shown by documentary evidence. . . ." (§ 6600, subd. (a), italics added.) In the context of this civil commitment scheme we can say that the Legislature's decision to forgo the full relitigation of crimes—many of which may have occurred as in this case years ago—for which appellant and other SVP's have been convicted and punished, is justified by the compelling interest in protecting the public from those likely to engage in sexually violent behavior.

In sum, the Legislature did not offend equal protection principles by permitting hearsay contained in documents to be introduced as proof of the fact of prior qualifying convictions or as proof of the details of those offenses in trial on the SVP petition.

The SVP law, by not according persons subject to a petition all rights accorded criminal defendants, does not on its face offend equal protection principles. Nor, as we discuss below, did the provision permitting the admission of documentary evidence deny this appellant equal protection.

B. *Ineffective Assistance of Counsel**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 921.

## II.   DISPOSITION

The order of commitment is affirmed.

Hanlon, P. J., and Reardon, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 26, 2000.