Filed 4/17/13  P. v. Baulknight CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ERIC BAULKNIGHT,<br><br>    Defendant and Appellant. | D061905<br><br><br><br>(Super. Ct. No. SCD234645) |

APPEAL from a judgment of the Superior Court of San Diego County, Eugenia A. Eyherabide, Judge.  Affirmed.

Defendant Eric Baulknight pled guilty to committing crimes on June 5, 2011.  He also admitted he had a prior serious felony conviction and a prior strike conviction.  The court imposed a 13-year stipulated sentence.

Baulknight's sole appellate contention is that the court erred in calculating his presentence conduct credits.  (Pen. Code,[1] § 4019.)  Specifically, he argues the trial court

---

[1]    All further statutory references are to the Penal Code.

erred in failing to award him enhanced presentence conduct credits under the current version of section 4019. The contention is without merit and we affirm the judgment.

FACTUAL AND PROCEDURAL SUMMMARY

The following factual summary is based on the probation report. On June 5, 2011, Baulknight punched his elderly mother after she refused to give him money for marijuana, resulting in substantial injury to his mother's face. Later that evening, Baulknight was transported to a mental health facility, where he attacked one of the nurses, punching her in the jaw and throat.

On February 15, 2012, Baulknight pled guilty to committing willful cruelty to an elder adult resulting in great bodily injury and an assault by force likely to inflict great bodily injury. (§§ 368, subd. (b)(1), 243, subd. (d).) On April 19, 2012, the court sentenced Baulknight to 13 years, and awarded him 320 actual days and 160 conduct credits. Baulknight was in continuous local custody from the date he committed the crimes until he was sentenced.

DISCUSSION

Baulknight contends the court erred in calculating his custody credits based on the prior version of section 4019, rather than on the newer version of the statute that became operative on October 1, 2011, while he was awaiting sentencing.

Under section 4019, defendants are entitled to earn credit towards their sentences by performing additional labor (§ 4019, subd. (b)) and for good behavior (§ 4019, subd. (c)). These credits are referred to as conduct credits. (*People v. Duff* (2010) 50 Cal.4th 787, 793.)

The Legislature has repeatedly amended section 4019 regarding the proper calculation of conduct credits. When Baulknight committed his offense in June 2011, individuals who had been convicted of a serious or violent felony were entitled to two days of conduct credits for every four days actually served. (See Former § 4019, subd. (f); Stats. 2010, ch. 426, § 2; former § 2933, subd. (e)(1); see *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48-49 (*Rajanayagam*).) However, when Baulknight was in local custody awaiting sentencing, the Legislature amended section 4019 as part of the Realignment Act and amended former section 2933. The amendments, which became operative on October 1, 2011, eliminated the prior felony strike disqualification and increased the amount of conduct credits earned by prisoners in local custody to one day of conduct credit for each day spent in actual custody. (§ 4019, subds. (b), (c), (f); Stats. 2011, ch. 39, § 53; see also Stats. 2011-2012, 1st Ex. Sess., ch. 12, § 35 (Assem. Bill No. 17 (2011-2012 Ex. Sess.).)

In awarding 160 conduct credits to Baulknight, the court applied the former version of section 4019 in effect at the time Baulknight *committed* his crime. Baulknight contends the applicable conduct credits he accrued after the amendment's operative date (October 1, 2011) should have been calculated using the more generous amended rate. He argues the reduced conduct credit award for his time served after October 1, 2011 violates section 4019 and his equal protection rights.

Baulknight forfeited this argument by failing to raise the issue in the proceedings below. By not objecting to the conduct credit calculation, Baulknight waived his right to

3

challenge any error in the court's award amount. (*People v. Myers* (1999) 69 Cal.App.4th 305, 312.)

We also conclude the argument fails on its merits. With respect to the October 1, 2011 amendment, section 4019, subdivision (h) states: "The changes to this section enacted by the act that added this subdivision *shall apply prospectively and shall apply to prisoners who are confined* to a county jail, city jail, industrial farm, or road camp *for a crime committed on or after October 1, 2011.* Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." (Italics added.)

Baulknight was confined for crimes committed in June 2011, which is before October 1, 2011. Thus, the amended statute's new credit calculation rate is expressly inapplicable to Baulknight.

Although recognizing that the first sentence of section 4019, subdivision (h) states that the amendment "shall apply prospectively" and "shall apply to prisoners who are confined . . . for a crime committed on or after October 1, 2011," Baulknight nonetheless contends he is entitled to take advantage of the amendment for local time served *after* October 1, 2011, because the second sentence of section 4019, subdivision (h) refers to days earned by a prisoner before the October 1 date. Baulknight argues that to give meaning to this second sentence, the statute must be interpreted as providing that days earned by a prisoner after October 1, 2011 must be calculated at the rate established by the new law, even if the crime was committed before the October 1 date.

Several courts have rejected the identical argument. (See, e.g., *Rajanayagam, supra,* 211 Cal.App.4th 42; *People v. Ellis* (2012) 207 Cal.App.4th 1546 (*Ellis*).) The

4

*Rajanayagam* court explained: "[S]ubdivision (h)'s first sentence reflects the Legislature intended the enhanced conduct credit provision to apply only to those defendants who committed their crimes on or after October 1, 2011. Subdivision (h)'s second sentence does not extend the enhanced conduct credit provision to any other group, namely those defendants who committed offenses before October 1, 2011, but are in local custody on or after October 1, 2011. Instead, subdivision (h)'s second sentence attempts to clarify that those defendants who committed an offense before October 1, 2011, are to earn credit under the prior law. However inartful the language of subdivision (h), we read the second sentence as reaffirming that defendants who committed their crimes before October 1, 2011, still have the opportunity to earn conduct credits, just under prior law. . . . To imply the enhanced conduct credit provision applies to defendants who committed their crimes before the effective date but served time in local custody after the effective date reads too much into the statute and ignores the Legislature's clear intent in subdivision (h)'s first sentence. [fn. omitted.] [¶] We recognize the Legislature in drafting subdivision (h)'s second sentence used the word 'earned.' And it is impossible to earn presentence credits for an offense that has not yet been committed. But reading the first and second sentences together, the implication is the enhanced conduct credit provision applies to defendants who committed crimes before October 1, 2011, but who served time in local custody after that date. To isolate the verbiage of the second sentence would defy the Legislature's clear intent in subdivision (h)'s first sentence and contradict well-settled principles of statutory construction. . . . [W]e find the enhanced

5

conduct credit provision applies *only* to those defendants who committed their crimes on or after October 1, 2011." (*Rajanayagam*, *supra*, 211 Cal.App.4th at p. 52.)

The *Ellis* court similarly concluded: "In our view, the Legislature's clear intent was to have the enhanced rate apply *only* to those defendants who committed their crimes on or after October 1, 2011. [Citation.] The second sentence does not extend the enhanced rate to any other group, but merely specifies the rate at which all others are to earn conduct credits. So read, the sentence is not meaningless, especially in light of the fact the October 1, 2011, amendment to section 4019, although part of the so-called realignment legislation, applies based on the date a defendant's crime is committed, whereas section 1170, subdivision (h), which sets out the basic sentencing scheme under realignment, applies based on the date a defendant is sentenced." (*Ellis, supra*, 207 Cal.App.4th at p. 1553.)

We agree with the reasoning of the *Rajanayagam* and *Ellis* courts and reach the same conclusion. The plain language of section 4019, subdivision (h) makes clear the amendment's new credit calculation rate applies only to individuals who are confined for a crime committed on or after October 1, 2011. Reasonably read, the second sentence does not permit a court to ignore this plain language. We thus reject Baulknight's contention he is statutorily entitled to conduct credits at the increased rate provided in the amended version of section 4019.

We also reject Baulknight's argument that this interpretation of section 4019 violates his constitutional equal protection rights.

6

To succeed on an equal protection claim, Baulknight must first show the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. (See *People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199; *People v. Wilkinson* (2004) 33 Cal.4th 821, 836-837; *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 571.) Second, Baulknight must show there is no rational basis for the different treatment of similarly situated groups. (See *People v. Kennedy* (2012) 209 Cal.App.4th 385, 397 [proper test for issues concerning conduct credits is rational basis review].) Under this highly deferential test, a statutory classification is constitutionally sound if there are any reasonably conceivable facts that could provide a rational basis for the classification. (*Ibid.*; see *People v. Turnage* (2012) 55 Cal.4th 62, 74-75.)

For purposes of Baulknight's appellate contention, there are two classes of incarcerated inmates: (1) those in jail on or after October 1, 2011, having committed a crime on or after October 1, 2011; and (2) those in jail on or after October 1, having committed the same offense before October 1, 2011. Even assuming these groups are similarly situated, the classifications bear a rational relationship to a legitimate state purpose.

One of the objectives of the Realignment Act and the amendment to section 4019 was to more cost-effectively manage prison populations. (See *Rajanayagam, supra*, 211 Cal.App.4th at pp. 54-55.) This goal is achieved by the section 4019 amendment, as the fiscal crisis is ameliorated to a degree by awarding additional conduct credits to those prisoners who committed their crimes on or after October 1, 2011. Although awarding enhanced credits retroactively would have produced greater cost savings, the Legislature

7

did not choose this approach. Nonetheless, the approach the Legislature did choose bears a rational relationship to cost savings.

Under the rational relationship test, the Legislature is permitted to "experiment individually with various therapeutic programs related to criminal charges or convictions" (*In re Huffman* (1986) 42 Cal.3d 552, 561), so as "to control the risk of new legislation by limiting its application" (*People v. Lynch* (2012) 209 Cal.App.4th 353, 361), and determine what works and what does not. (See *Warden v. State Bar* (1999) 21 Cal.4th 628, 649 [reform measures can be implemented one step at a time].) Because the deferential nature of the rational basis test does not permit us to second guess the Legislature and determine the most effective manner to achieve the legitimate state interest, the classifications established in section 4019 bear a rational relationship to a legitimate state interest.

Baulknight contends the date of October 1, 2011 is arbitrary and thus has no legitimate or rational public purpose. However, all changes, additions or deletions to the code must have a beginning date. Equal protection of the law "does not forbid statutes and statutory changes to have a beginning and thus to discriminate between rights of an earlier and later time." (*Sperry & Hutchinson Co. v. Rhodes* (1911) 220 U.S. 502, 505; see *People v. Floyd* (2003) 31 Cal.4th 179, 188 ["[d]efendant has not cited a single case, in this state or any other, that recognizes an equal protection violation arising from the timing of the [operative] date of a statute lessening the punishment for a particular offense"].)

Additionally, the Legislature could have rationally believed that by making the 2011 amendment to section 4019 apply based on the offense date, it was "preserving the deterrent effect of the criminal law as to those crimes committed before that date. To reward appellant with the enhanced credits of the 2011 amendment to section 4019, even for time he spent in custody after October 1, 2011, weakens the deterrent effect of the law as it stood when appellant committed his crimes. We see nothing irrational or implausible in a legislative conclusion that individuals should be punished in accordance with the sanctions and given the rewards (conduct credits) in effect at the time an offense was committed." (*People v. Kennedy, supra*, 209 Cal.App.4th at p. 399.)

## DISPOSITION

Judgment affirmed.

HALLER, J.

WE CONCUR:

BENKE, Acting P. J.

McDONALD, J.

9