Filed 3/18/13  P. v. Moats CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D061406 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD233864) |
| ANTHONY ERIC MOATS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Margie G. Woods, Judge.  Affirmed.

Anthony Eric Moats appeals a judgment sentencing him to two years in prison after he pleaded guilty to one count of possessing a controlled substance.  (Health & Saf. Code, § 11350, subd. (a).)  Moats contends the statutory construction of Penal Code[1] section 4019 and principles of equal protection entitle him to additional presentence

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

custody credits. We conclude that under the rules of statutory construction, the enhanced conduct credit provision of section 4019 applies only to defendants who committed their crimes on or after October 1, 2011. We further conclude section 4019 does not violate principles of equal protection of the federal or state Constitutions (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a)), and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On April 21, 2011, the police conducted a fourth amendment waiver search of Moats's residence. In Moats's bedroom the police discovered one hydrocodone pill, three morphine pills, and two hydromorphone pills. A used syringe and three narcotics smoking devices were also found. The police arrested Moats and he was charged with three counts of possessing a controlled substance, and possessing narcotics paraphernalia (Health & Saf. Code, §§ 11350, subd. (a), 11364).

Moats was in county jail awaiting trial, on October 1, 2011, when the 2011 amendments to section 4019 became operative.[2] (Stats. 2011-2012, 1st Ex. Sess., ch. 12, § 35.) Moats then pleaded guilty to one count of possessing a controlled substance and, following a motion by the prosecution, the court dismissed the remaining charges and enhancement allegations. On December 21, 2011, the court sentenced Moats to prison for the middle term of two years. The court awarded him a total of 338 days of custody credits consisting of 226 days for actual time spent in local custody awaiting trial and

---

[2]    Section 4019 was amended in 2011 in conjunction with the 2011 Realignment Legislation (Realignment Act), which addressed public safety. (Stats. 2011, ch. 15, § 1; see § 1170, subd. (h).)

2

sentencing (§ 2900.5, subd. (a)), and 112 days of conduct credits for good behavior (§ 4019, subd. (c)).

## DISCUSSION

Under section 4019, defendants are entitled to earn additional credit towards their sentences by performing additional labor (§ 4019, subd. (b)) and for good behavior (§ 4019, subd. (c).) To differentiate from credits earned by actual time spent in custody, these additional credits are referred to as conduct credits. (*People v. Duff* (2010) 50 Cal.4th 787, 793.)

Before October 1, 2011, persons who, like Moats, had been convicted of a serious or violent felony were entitled to only two days of conduct credits for every four days actually served. (Former Pen. Code, § 4019, subd. (f); Stats. 2010, ch. 426, § 2.) However, on October 1, 2011, when Moats was in local custody awaiting sentencing, the Legislature amended section 4019 in Assembly Bill No. 109 (2011-2012 Reg. Sess.), as part of the Realignment Act. The amendment, which became operative October 1, 2011, increased the amount of conduct credits earned by prisoners in local custody to one day of conduct credit for each day spent in actual custody. (§ 4019, subd. (f); Stats. 2011, ch. 39, § 53.) As relevant here, section 4019, subdivision (h), provides:

> "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law."

3

Moats committed his offenses on April 21, 2011. At sentencing, the court applied the former version of section 4019 in effect at the time Moats *committed* his crime.

Moats contends any applicable conduct credits he accrued after the operative date of the amendment to section 4019 on October 1, 2011, should have been calculated using the more generous amended rate. He argues the award of only 112 days of conduct credits violated both the terms of section 4019 as amended and his right to equal protection.

Before examining issues of statutory construction or equal protection, we note that Moats forfeited any argument of entitlement to additional conduct credits. At sentencing, immediately after awarding Moats 112 days of conduct credits, the court asked both parties if they wished to be heard on the matter. Moats's counsel did not object to the conduct credit award at that time. By not objecting to the award of conduct credits, Moats forfeited the right to challenge on appeal any error in the court's award amount. (*People v. Myers* (1999) 69 Cal.App.4th 305, 312 [defendant forfeited any claim of error in presentence credits by stipulating to amount awarded].) Nevertheless, to avert a claim of ineffective assistance of counsel, we address the merits of Moats's statutory construction and equal protection arguments. (See, e.g., *People v. Norman* (2003) 109 Cal.App.4th 221, 229-230 [court examined sentence to determine if cruel and unusual despite defendant's waiver of argument].)

A.    *Statutory Construction*

Moats asserts that under the rules of statutory construction, section 4019 as amended requires the court to grant one-for-one conduct credits for all time spent in local

custody after October 1, 2011.  He contends the second sentence of section 4019, subdivision (h), *suggests* that days earned by a prisoner after October 1, 2011, must be calculated at the rate established by the new law.

The language in section 4019 subdivision (h), that "[a]ny days earned . . . prior to October 1, 2011, shall be calculated at the rate required by the prior" law could be read to imply that any days earned by a defendant after that date should be calculated using the amended rate, regardless of the date the offense was committed.  (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 52 (*Rajanayagam*).)  However, to do so would invalidate the immediately preceding sentence of section 4019, which *explicitly* limits the benefits of the new accrual rate to those defendants who committed their crimes after October 1, 2011.  (*Ibid.*)  Moats's proffered interpretation would "defy the Legislature's clear intent in subdivision (h)'s first sentence and contradict well-settled principles of statutory construction."  (*Ibid.*)

Moreover, California follows the time-honored legal principle that absent a clearly manifested intent to the contrary, there is a legal presumption that all statutes operate prospectively.  (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1208-1209.)  Therefore, statutes ambiguous with respect to retroactive application are to be construed as unambiguously prospective.  (*Ibid.*; see also *Lindh v. Murphy* (1997) 521 U.S. 320, 328, fn. 4 [statute applied retroactively only where statutory language is "so clear that it could sustain only one interpretation"].)  One noted exception to the presumption of prospective application exists where the Legislature reduces the *punishment* for a

5

particular offense.  (*In re Estrada* (1965) 63 Cal.2d 740, 748.)  However, section 4019 merely addresses future conduct; it does not alter the penalty for any particular crime and thus that exception is not applicable here.  (*People v. Ellis* (2012) 207 Cal.App.4th 1546, 1551; see also *People v. Brown* (2012) 54 Cal.4th 314, 325 (*Brown*)).

Although section 4019 could have been drafted more artfully, "the Legislature's clear intent was to have the enhanced rate apply *only* to those defendants who committed their crimes on or after October 1, 2011.  [Citation.]  The second sentence does not extend the enhanced rate to any other group, but merely specifies the rate at which all others are to earn conduct credits."  (*People v. Ellis, supra,* 207 Cal.App.4th at p. 1553; see also *Rajanayagam, supra,* 211 Cal.App.4th at p. 52 [§ 4019, subd. (h) merely reaffirms that defendants who committed their crimes before October 1, 2011, can still earn conduct credits, just under the prior law].)  The Legislature's clear and explicit intent to apply the new custody credit formula only prospectively cannot be overridden by an implied interpretation of the second sentence in the statute.  Thus, Moats's argument that statutory construction requires modification of his conduct credit award is not persuasive.

B.    *Equal Protection*

Moats also invokes the basic guarantees of equal protection embodied in the Fourteenth Amendment to the United States Constitution and article I, section 11 of the California Constitution, to support his contention.  (*Hayes v. Superior Court* (1971) 6 Cal.3d 216, 223; *In re King* (1970) 3 Cal.3d 226, 232.)  Moats asserts that were section

4019 interpreted to apply only to crimes committed on or after October 1, 2011, it would violate equal protection principles.

### 1. *Classes Not Similarly Situated*

To succeed on a claim under the equal protection clause, Moats must first show the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199; see also *People v. Wilkinson* (2004) 33 Cal.4th 821, 836-837; *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 571.) For purposes of section 4019 there are two classes of incarcerated inmates: (1) those in jail on or after October 1, 2011, having committed a crime on or after October 1, 2011; and (2) those in jail on or after October 1, having *committed the same offense before* October 1, 2011.

Moats asserts the primary purpose of awarding conduct credits is to reward those defendants who perform additional work and behave. However, the "very purpose of conduct credits is to foster constructive behavior in prison by reducing punishment." (*People v. Lara* (2012) 54 Cal.4th 896, 906). Although the end result may be that prisoners are indeed rewarded for performing additional work and behaving, the primary reason section 4019 was enacted is to encourage good behavior, not simply to reward it.

Relying on *Rajanayagam*, Moats also contends that even if the primary purpose of awarding conduct credits is to provide an incentive to work and behave, both classes have an incentive to work and behave but a defendant who committed a crime before the operative date is rewarded less. (*Rajanayagam, supra,* 211 Cal.App.4th at pp. 52-53.)

7

Therefore, Moats believes section 4019 necessarily creates a classification that affects two similarly situated groups in an unequal manner. However, as the Supreme Court noted, "prisoners who served time before the incentives took effect . . . could not have modified their behavior in response. That prisoners who served time before and after former section 4019 took effect are not similarly situated necessarily follows." (*People v. Brown, supra*, 54 Cal.4th at pp. 328-329 [examining applicability of retroactivity to § 4019]; see also *People v. Kennedy* (2012) 209 Cal.App.4th 385, 396-397.) Although *Brown* examined whether section 4019 should be applied retroactively to all prisoners, the logic is nonetheless applicable here.

Additionally, even were we to conclude both groups have a similar incentive to work and behave, we do not believe both groups have the same inducement. Although the type of incentive--additional conduct credits--may be the same between the groups, the amount of that incentive is not the same. Those prisoners who commit crimes and serve time after the incentives take effect have a greater incentive to alter their behavior than those who committed crimes before the later-enacted incentives. Contrary to Moats's claims, the two groups are not similarly situated and, as a result, the analysis of his equal protection claims does not proceed to the next step of the level of review.

2. *Rational Basis Review is the Proper Level of Scrutiny*

Although we need not decide the appropriate level of review, we believe rational basis review is the proper level of scrutiny. In considering whether state legislation violates equal protection, " 'we apply different levels of scrutiny to different types of

8

classifications. At a minimum, a statutory classification [affecting similarly situated individuals] must be rationally related to a legitimate governmental purpose. [Citations.] Classifications . . . affecting fundamental rights . . . are given the most exacting scrutiny.' " (*People v. Wilkinson, supra,* 33 Cal.4th at p. 836; see also *Manduley v. Superior Court, supra,* 27 Cal.4th at p. 571.) When a statutory classification infringes on either a fundamental interest or right, the law or policy must be justified by a compelling interest and that the distinctions drawn by the law are necessary to further this interest. (*People v. Olivas* (1976) 17 Cal.3d 236, 251.) In all other instances, rational basis review is the default level of review; the state is only required to make a showing that "the legislative classification bears a rational relation to some independent and legitimate legislative end." (*Romer v. Evans* (1996) 517 U.S. 620, 621.)

In his reply brief Moats argues the appropriate standard of analysis in a case involving conduct credit is the strict scrutiny test because liberty is a fundamental interest. Having concluded the two groups are not similarly situated, we need not determine whether a strict scrutiny or rational basis test applies. Further, although Moats raised an equal protection claim in his opening brief, he did not argue or discuss the specific issue of the appropriate standard to be applied. Thus, discussion of the level of review in his reply brief is not timely. (*People v. Baniqued* (2000) 85 Cal.App.4th 13, 29; *Utz v. Aureguy* (1952) 109 Cal.App.2d 803, 807-808.)

However, contrary to Moats's argument, there is no fundamental interest at stake with regard to conduct credits. The argument could be made that to limit a prisoner's

9

opportunity to earn conduct credits is to increase punishment, because it "substantially alters the consequences attached to a crime already completed, and therefore changes 'the quantum of punishment.' " (*Weaver v. Graham* (1981) 450 U.S. 24, 33.)  After all, "a person who is released a day early is punished a day less." (*People v. Lara, supra,* 54 Cal.4th at pp. 905-906.)  As Moats notes, courts have in the past reached different conclusions as to the applicable test for incongruities resulting from statutes involving time credits.  (See, e.g., *People v. Austin* (1981) 30 Cal.3d 155, 166 [compelling interest]; *People v. Sage* (1980) 26 Cal.3d 498, 508 [same]; *People v. Caruso* (1984) 161 Cal.App.3d 13, 17-18 [same]; *People v. Jacobs* (1984) 157 Cal.App.3d 797, 801 [same]; *In re Kapperman* (1974) 11 Cal.3d 542, 544-546 [rational relationship]; *People v. Silva* (1994) 27 Cal.App.4th 1160, 1168 [same]; *People v. King* (1992) 3 Cal.App.4th 882, 885 [same].)  However, these cases no longer stand for the proposition Moats claims, as our Supreme Court held the cases they relied on should not be so broadly read as to require strict scrutiny "whenever one challenges upon equal protection grounds a penal statute or statutes that authorize different sentences for comparable crimes." (*People v. Wilkinson, supra,* 33 Cal.4th at p. 837.)

Personal liberty is not at stake in cases of conduct credits as "section 4019 does not alter the penalty for any crime; a prisoner who earns no conduct credits serves the full sentence originally imposed.  Instead of addressing punishment for past criminal conduct, the statute addresses *future conduct* in a custodial setting by providing increased

10

incentives for good behavior."  (*People v. Brown, supra,* 54 Cal.4th at p. 325.)  The

proper test for issues concerning conduct credits is rational basis review.

      3.  *A Rational Relationship to a Legitimate State Purpose Exists*

      Assuming the state had adopted a classification that affected two or more similarly

situated groups in an unequal manner, the next step would be to determine whether those

classifications bear a rational relationship to a legitimate state purpose.  We must note

that the rational relationship test is highly deferential.  (*People v. Turnage* (2012) 55

Cal.4th 62, 77 ["[a] classification is not arbitrary or irrational simply because there is an

'imperfect fit between means and ends' "].)  Under the rational relationship test, a

statutory classification is constitutionally sound if there are any reasonably conceivable

facts that could provide a rational basis for the classification.  (*People v. Hofsheier,*

*supra,* 37 Cal.4th at p. 1200.)

      Moats argues that because one of the purposes of both the Realignment Act and

the amendment to section 4019 was to more cost-effectively manage prison populations,

the arbitrary date of October 1, 2011, has no legitimate or rational public purpose.

However, all changes, additions or deletions to the code must have a beginning date.

Equal protection of the law "does not forbid statutes and statutory changes to have a

beginning, and thus to discriminate between rights of an earlier and later time."  (*Sperry*

*& Hutchinson Co. v. Rhodes* (1911) 220 U.S. 502, 505; see also *People v. Floyd* (2003)

31 Cal.4th 179, 188 ["[d]efendant has not cited a single case, in this state or any other,

11

that recognizes an equal protection violation arising from the timing of the [operative] date of a statute lessening the punishment for a particular offense"].)

The stated goal of the Legislature is achieved by the amendment, as the fiscal crisis is ameliorated to a degree by awarding additional conduct credits to those prisoners who committed their crimes on or after October 1, 2011. Although awarding enhanced credits retroactively would have produced greater cost savings, the Legislature did not choose this approach. Nonetheless, the approach the Legislature did choose bears a rational relationship to cost savings.

> "[T]he Legislature could rationally have believed that by making the 2011 amendment to section 4019 have application determined by the date of the offense, they were preserving the deterrent effect of the criminal law as to those crimes committed before that date. To reward appellant with the enhanced credits of the 2011 amendment to section 4019, even for time he spent in custody after October 1, 2011, weakens the deterrent effect of the law as it stood when appellant committed his crimes. We see nothing irrational or implausible in a legislative conclusion that individuals should be punished in accordance with the sanctions and given the rewards (conduct credits) in effect at the time an offense was committed." (*People v. Kennedy, supra,* 209 Cal.App.4th at p. 399.)

Although the amendment to section 4019 may result in the two classifications obtaining different conduct credit earning results, under the rational relationship test, the Legislature is permitted to "experiment individually with various therapeutic programs related to criminal charges or convictions" (*In re Huffman* (1986) 42 Cal.3d 552, 561), so as "to control the risk of new legislation by limiting its application" (*People v. Lynch* (2012) 209 Cal.App.4th 353, 361) and determine what works and what does not. (*Warden v. State Bar* (1999) 21 Cal.4th 628, 649 [reform measures can be implemented

12

one step at a time].) Because the deferential nature of the rational basis test does not afford us the power to second guess the Legislature and determine the most effective manner to achieve that legitimate state interest, we conclude the classifications established in section 4019 bear a rational relationship to a legitimate state interest.

## DISPOSITION

The judgment is affirmed.


McDONALD, Acting P. J.

WE CONCUR:

McINTYRE, J.

AARON, J.